Ms. Altman, pleased to hear from you. Thank you, Your Honor. May it please the Court, Heidi Altman presenting these arguments on behalf of the petitioner, Mr. Garfield-Kennelt Lawrence, and I'd like to address three points to the Court today. First, central, is the Board of Immigration Appeals' misapprehension of the due diligence prong of the equitable tolling analysis in this case. The Board wrongfully required the maximum feasible diligence of Mr. Lawrence in pursuing his claim, rather than the, quote, reasonable diligence that has been required by the Supreme Court in Holland. Holding Mr. Lawrence to this unlawfully heightened standard would work a gross miscarriage of justice. Where do you get that standard? That standard comes directly, Your Honor, from Holland. Now, why do you say that the Board applied that in this case? Ah, I understand. So what the Board did in this case is to present a cursory approach to the diligence analysis, first presenting essentially a smattering of facts and then jumping right to a conclusory statement that Mr. Lawrence had not exercised sufficient diligence. Never once did the Board ask or answer the one central question. No, but why do you say that incorporates a standard of maximum diligence or whatever you said? I don't find that language in the Board's decision. That's right. The reason why you don't find the language is because the Board actually failed to even use the word reasonableness, failed to articulate what the standard is, and then in conducting its analysis applied an unlawfully heightened standard. What the Supreme Court has said is that the Board should have asked the question, would it have been reasonable to ask Mr. Lawrence to apply further diligence than he did? That's what we look at in Holland. When you see the Board indicating that someone waited 2 1⁄2 years after the Board's order before filing a motion to reopen, that's absent some pretty good explanation. That's not exercising reasonable diligence. The exercise of reasonable diligence would suggest that you would file a motion to reopen, preferably within the 90-day period set forth by the statute, but if not then, at least within 2 1⁄2 years. Right. Well, Your Honor, there is more than a pretty good explanation in this case. And we remember that the equitable tolling test is a two-prong analysis. The extraordinary circumstance prong is the more stringent, the less forgiving of that test, and that is not at issue here. Under Chenery, we are only looking at the diligence analysis, which is the more forgiving of the two prongs. Do we even have jurisdiction over this case? Because normally we have jurisdiction over legal questions and matters of statutory and constitutional law, but we don't have jurisdiction over discretionary Board rulings. I know you try to say, oh, they used a maximum diligence standard, and I think they don't fault you for it in any way, but the reason you would like us to read into this decision of maximum diligence standard is so that you can make this into a question of law. But is it really a question of law or simply a plain potatoes discretionary call? It is a question of law. And, in fact, regardless of how the court looks at it, whether it's the misapplication of a standard, the application of the wrong standard, the diligence analysis is a question of law. Every circuit court to have looked at the question of alleged error in the application of the diligence standard in this context has found it to be a question of law that is reviewable under 8 U.S.C. 1252A2D. If there was a misapplication, it might be true, but I don't understand where you get this maximum possible diligence standard. I mean, I read the Board's decision, and I didn't see that. Well, what it is, Your Honor, is an unlawfully heightened standard, and this court has looked at other analogous circumstances where the petitioner is arguing that the Board has applied an unlawfully heightened standard and found that to be a question of law. And so I would point you for ex- Could you read to me the words that suggest an unlawfully heightened standard? In the Board's decision? Yes. So it's the conclusion that the Board has reached, Your Honor, as well as- The words. Sure, sure. So what the Board does, and I'm looking at page 4 of the administrative record now, the Board focuses in on the amount of time that has passed, the number of days that has passed, and says that the two documents, it references only two documents of the many submitted in evidence, do not sufficiently show that the respondent acted with due diligence during the period of more than two years. That seems to be the correct standard, not a heightened standard, did not sufficiently act with due diligence, and having one of the factors be the particular time elapsed? I mean- Right. What you read to me seems to suggest that the Board applied the correct standard. Well, the Board stated that it did not find due diligence, but failed to provide any reasoned explanation for why Mr. Lawrence acted unreasonably. And in Tosse v. Holder, under an abusive discretion standard, that's what this Court must ask. Did the Board provide a reasoned explanation? And, in fact, there is no analysis whatsoever provided. With the analysis they did provide, or you wanted it to be longer? Because when I look at page 4, again, of the appendix, at the top of the page, there's a fairly long paragraph that seems to go into some detail of the Board reciting items from the record provided by the respondent, including correspondence with counsel and meetings with counsel. And they do put those items in the record and use that as a basis for decision. Obviously, you disagree with the decision. I understand that. It is not the, oh, I'm sorry. It's not that they have omitted it. It's either that, for reasons you need to articulate, there was a legal error in that it wasn't longer, or you simply disagree. It is not the length of the decision with which we disagree or that matters. What matters is that, under an abusive discretion standard, we look to whether the reasoning was articulated. But what's the question of law here? There has to be some question of law or some constitutional question before we, you know. I think you have two hurdles to get over. First of all, you've got to create a question of law or a constitutional question to establish the court's jurisdiction. And then, after that, you've got to indicate that the board, in some ways, committed error in considering the factors that it did to satisfy that. So let me try to leap both hurdles. Let me try to leap both hurdles, if I may, Your Honor. First, the error. The error is that the board never asked the central question, was Mr. Lawrence acting with reasonable diligence, and failed to look at the facts that relate to the most central components of that analysis. I'll give just one example, which is that this court held in CVLR Performance Horses that access to courts is a central component of whether diligence has been reached. In this case, Mr. Lawrence, of course, had been deported in 2013. So it wasn't just international borders that separated him from this court. It was the fact that he literally, and he stated this in his affidavit, lacked access to any international communications. That's really taking exception to the board's discretionary call. Well, if I may, and I'd like to address your second concern, Judge Wilkinson, which is the jurisdiction question. And I'd like to point you to two decisions of this court. One is Jeanne v. Gonzalez, in which this court found a reviewable question of law over whether the board had erred in determining that Ms. Jeanne had or had not demonstrated good moral character in the context of a discretionary decision. And so what's important about that case, of course, is that the board held, this court held, that what we were looking at there was the application of a legal standard to uncontested facts. And in that case, this court held clearly in Jeanne there is jurisdiction. In another case, this is an unpublished case, but I think the nature of the legal question is indistinct from today. Hersey is the name of that case. The court was looking at whether the board had erred in determining whether, I'm sorry, whether the board had erred in applying an unlawfully heightened standard to the question of whether the petitioner had filed within too long of a period after the one-year filing deadline for his asylum application. And the court held that that is a reviewable question because it is a question involving the application of a legal standard to uncontested facts. And so it's really indistinct from what we were looking at today, where we argue where Mr. Lawrence was held to an impermissibly heightened standard. I would hate to be reviewed at the Supreme Court when I actually used the words of the standard that they had given me. And the court used the word due diligence, and then it proceeded to apply a variety of factors, which would, under the totality of circumstances, bear upon due diligence, including how long after the intervening Moncrief decision it took to file the motion to reopen, how long did it take to contact counsel, how long did it take after a lawyer was contacted to file the decision. They didn't just brush it off. Sometimes we see these board decisions that just brush it off in a paragraph or a page or a paragraph or even a sentence. But here the board went into some length. They explained in a footnote that there could have been contacting family members to receive documents. The word diligence has to mean something. I see that my time is up, but if I may briefly respond. The word diligence certainly has to mean something, and although the board may have spent a paragraph analyzing it, it analyzed it without looking to the actual standard that the Supreme Court has put forth, which is reasonableness, and relied on four cases, none of which were analyzing the reasonableness question. To answer your jurisdiction concerns, Your Honor, I would just note that, as I mentioned previously, and as we state in our briefing, six other circuit courts have looked to the diligence question in this context, in the motion to reopen context, and have all found the diligence analysis itself to be a question of law, regardless of whether the proper standard was applied. In each of those cases, the courts actually dug into the board's diligence analysis, looking to the amount of time that had passed, looking to the reasons for the delay behind that time, and determining whether or not the board had erred, and found that to be a proper analysis that is a question of law giving rise to jurisdiction. Thank you. You've reserved some time for rebuttal as well, Ms. Altman. I have. Thank you, Judge. Ms. McLeod-Ball, we'd be happy to hear from you. Thank you, Your Honor. May it please the Court, I'm Kristen McLeod-Ball. I'm representing AMICI, the American Immigration Council, and the National Immigration Project of the National Lawyers Guild. Today, the Court has the opportunity, first, to preserve meaningful access to statutory motions to reopen, which the Supreme Court has recognized as an important safeguard in immigration proceedings. Second, the Court can recognize that, at a minimum, we're an unsophisticated claimant, facing extreme barriers to accessing the courts due to deportation, who sought out and cooperated with counsel. Congress is the one charged with setting the jurisdiction of the federal courts and setting the ground rules for access to the federal courts. And when we're talking about access to the federal courts, Congress has said, bring these things within 90 days of the final administrative decision. Now, if you disagree with what Congress did, perhaps as a matter of court access, that period should be lengthened. But my problem here is that we have a 90-day period after the intervening decision, and it's two years. We have a 90-day period from the time of the final administrative order, and it's two years from an intervening decision. Two years! That's what... It's eight times the statutory limitations period, and another 1.5 years elapsed since Lawrence first contacted a project attorney. I mean, with these kinds of delays, if we rule the board abused its discretion, it just opens the floodgates. Your Honor, there are several points I'd like to make in response to that. First, your last point in terms of the floodgates. I think it's very important to note that equitable tolling is a two-part test. You must show both extraordinary circumstances and due diligence. What we're looking at here is simply the diligence prong of that two-part test. Additionally, in terms of the role of Congress, obviously, in setting statutory deadlines, Congress legislates with the awareness that there's a presumption that statutory filing deadlines are subject to equitable tolling, which is the case here. So equitable tolling is part of this congressional process. As I mentioned, in its decisions in Kuchana and Dada, the Supreme Court has recognized that the motion to reopen process is an important... Nobody's saying here that equitable tolling should be eliminated as a doctrine or that there shouldn't be an equity, but the circumstances, the particular circumstances here. I thought also that at the time the Moncrief decision came down, I thought you had a review petition pending from an order of removal of the board. And so I don't understand why you couldn't at that point have asked for a remand to the board to reopen at that point or to ask for some sort of relief at that point because there was actually a review petition from a removal order, as I understand it, pending at the time Moncrief came down. Your Honor, I believe that in terms of the facts of this case, which Petitioner's Attorney may be more prepared to address, Mr. Lawrence, while he was still in detention in the United States, filed a pro se petition for review. In the incorrect court. He was unaware of the correct court in which he was supposed to file, and it went to the wrong court. Subsequently, he was deported. In his declaration, the evidence that's presented to the board, he made clear that he began looking for ways to continue pursuing his case immediately following deportation and that despite the extreme difficulties that he was facing, living more than 45 minutes from an Internet connection to be able to communicate with anyone at all, not being able to make phone calls and communicating with his family only through pre-recorded messages when he was able to afford... Except in September, the decision came down in April. In September, he contacted an attorney. Yes, Your Honor. Despite these extreme difficulties, Mr. Lawrence, whenever he was able to afford it on his $60 a week salary, traveled by taxi to an Internet cafe in order to research immigration law. He was able to locate one of the very few organizations that assist people who have been deported in terms of trying to figure out if there are any additional claims in their case. He sought them out. He cooperated with them and showed diligence through that process. I see that I'm almost out of time, and I just want to emphasize that had the board applied the proper standard in this case, which is reasonable diligence, it would have recognized his diligence, and for that reason, the decision should be vacated. Thank you. So we are supposed to say that every time the board reaches a holding or a position that you disagree with, automatically, automatically, because by virtue of your disagreement with the board's application of a standard, it thereby, ipso facto, becomes an improper standard, notwithstanding what the board itself said. Your Honor, of course not. In this case, the board failed to actually set out, as Ms. Altman mentioned, the reasonable diligence for a particular litigation. They submitted his declaration. They certainly recognized it. Yes, Your Honor. I mean, how much more were they supposed to do? Your Honor, they were supposed to look at the relevant information in the record. Merely mentioning it in passing does not indicate that they analyzed it, nor is there any discussion of reasonableness, which is the key question in this case. Thank you, Your Honors. We thank you. Mr. Spurlock, we're very pleased to hear from you. May it please the Court, Matthew Spurlock on behalf of the United States. To start out, I just want to clarify one thing about this case. Throughout Petitioner's brief and reply brief, they frequently refer to this as a wrongful removal, the wrongful removal of the Petitioner. But nothing could be further from the truth. The Petitioner was properly removed in January of 2013. The BIA had a final order of removal in 2012, December 2012, in which case they found that he was removable as an aggravated felon. He was removable for CIMTs and he was removable for convictions relating to a controlled substance. Leading up to that order of removal, there was no dispute about whether he was an aggravated felon or not an aggravated felon before the Board. Just in terms of the Board's standards, the words that Ms. Altman read would seem to indicate that it applied the proper standard. It goes into the fact that even after the attorney was contacted, the communications were sporadic and this and that, and then says, however, these documents do not sufficiently show that the respondent acted with due diligence during the period of more than two years since April 13 or one and a half years since September 2013. In other words, the Board applied the right standard. It didn't say that the respondent failed to act with extraordinary diligence or that the respondent failed to exercise maximum diligence. It comes right out and says it. We're applying a due diligence standard. You're absolutely correct, Your Honor. It's clearly a factual matter that the Board considered. They applied a due diligence standard and found that he didn't meet that standard. He didn't exercise due diligence. There couldn't be anything more factual about their analysis. Basically what the petitioner is asking the court to do is to, as the saying goes, dress up a factual issue as a legal issue, and that's just not what we have here. This is purely a factual issue. In the threshold question of jurisdiction, what's the government's position? Do you view this? Does our court have jurisdiction to hear this case? That's absolutely not, Your Honor. Our main argument is that this court does not have jurisdiction, primarily because this case should be barred as a criminal bar case because he was convicted of two offenses. They were found to be aggravated felons, but they were also found to be CIMTs and two controlled substance offenses. Do they remain so after Moncrief? Your Honor, that's an interesting question. They certainly remain CIMTs and they certainly remain offenses related to controlled substances. But not aggravated felons. Well, not addressing that because I wouldn't address it because the board didn't address it. No, I understand that. But just to clarify, they're no longer aggravated felons. I wouldn't, because the board didn't address it, Your Honor. I won't pressure you. I won't pressure you on that. Thank you, Your Honor. But clearly the circumstances today are different from the circumstances before Moncrief. As a matter of fact, it's a matter of law. Absolutely, Your Honor. In fact, because his offenses were for trafficking of marijuana, which is obviously what was at issue in Moncrief. But certainly we believe there's no jurisdiction based on the criminal bar because you still have the offenses were still CIMTs and they were still offenses related to controlled substances. Well, they're the same offenses, so they can be classified. If you assume they're classified as aggravated felonies, that would bar the application for cancellation of removal, I think. But if they're CIMTs, they would not bar cancellation for removal. That's correct, Your Honor. What I was getting at when I first mentioned this was not a wrongful removal was at the time that he was order removed and at the time he filed his PFR, first with the Second Circuit and then subsequently transferred to this court, this was all before Moncrief and there was absolutely nothing wrongful with their decision, the board's decision, the agency's decision at this time. Therefore, because he wouldn't have been able to bring his case anyway because his PFR before the Second Circuit was late, it was not timely, and therefore the Second Circuit, when they transferred to this court, the government filed a motion to dismiss based on an untimely PFR. This court didn't rule on it. One of the things that is curious to me about these sorts of cases is the sequencing of this because even if he were to prevail up here for some reason, just assuming argument, the most he would become eligible for would be cancellation of removal, but that would be a discretionary decision on the part of the Attorney General, correct? That's absolutely correct, Your Honor. Why, when you sequence this, before litigating it, wouldn't the government say or wouldn't the Attorney General file a declaration saying that this is not a situation for cancellation of removal in any event? We get a whole lot of these cases that are litigated when all it does is return it to the Attorney General for a discretionary call. It looks like you may be trying to get the courts to do a lot of work that the Attorney General could do in the first instance by saying, look, I have discretion on this and regardless of how it comes out, my discretion is not going to be exercised in favor of cancellation. Why are we sequencing these things this way? Your Honor, that's a very good question. Unfortunately, I don't have the perfect answer for you. I think it gets asked in every one of these cases, but Judge Wilkinson just asked. I'm sorry, I didn't mean to cut you off. Would the Attorney General do what Judge Wilkinson has suggested? I mean, it seems like that would moot appeals of this nature and you could move on to the . . . I mean, it just seems kind of silly to go through all these steps and if it's a foregone conclusion that it's going to be moot. That's correct, Your Honor, and I suppose the Board . . . I know that's not in this record, but it just seems kind of a mystery, obviously, to all of us. I think one answer I heard before in another case was that's above my pay grade. Is that what you're standing there thinking now? That's exactly what I'm saying. It's above my pay grade. The Board certainly could have issued in their decision something saying along the lines of, in any event, we wouldn't have granted this and there's no reason to remand this or reopen it because we wouldn't likely grant cancellation or removal given he has these convictions. It seems like we're playing a game of badminton or something, you know, where you just hit the shuttlecock over the net and everything. The Attorney General wants us to do the work so he won't have to bother with the reviewing and then we would like him to . . . All he has to do is file a declaration. I mean, the government files declarations in cases all the time just saying this is not a situation where someone would be eligible for removal in any event. I don't know whether that is this case or not, but it would be so simple. I don't have a good explanation for why that's not done, Your Honor, other than to say there . . . I believe the only explanation you have is the one that Judge Davis suggested to you. That's correct, Your Honor. Well, maybe, you know, some circuits aren't as . . . how shall I put it? Are different from ours. And maybe some circuits wouldn't look kindly on that kind of preemptive approach, maybe. Just speculating here. Maybe some circuits would view the Attorney General's attempt to sort of cut off consideration in that way as something that shouldn't be done. I'm just speculating here. I mean, we would never do that, but some circuits might. That's very possible, Your Honor. And you'd certainly want to have a national approach. You wouldn't do one thing in one circuit and something else in a different circuit and that kind of thing. Absolutely, they'd want to do that across the board. It's a national approach that's explained to the courts. Yeah. Yes, Your Honor. I'll bring that to the attention of my superiors at the Department of Justice. That's something that the court brought up as a possible way to move these cases. It might even find its way into the opinion in this case. Who knows? Yes, Your Honor. Yes, Your Honor. So, I mean, is your threshold position, I think it is, that we just don't have jurisdiction and that ends it? That's correct, Your Honor. In our brief, we did address also, even if the court did assume jurisdiction, it's the government's position that the board did not abuse their discretion when they denied his motion to reopen. And clearly the board considered all the evidence that was put forth. Petitioner, although they say that there's no, you know, they didn't review everything, they didn't consider this, they didn't consider that, but they don't specifically say what wasn't considered that would have made all the difference in the world in this case. They don't address that. And so it's a very high standard under Cusk that basically... We use the word extreme deference, which may be a little extreme itself, but that was the phrase that was used. One of the things, I mean, you've seen a lot of these too. I see a lot of these one-line, one-paragraph decisions from the board on motions to reopen. Motion to reopen is like a petition for rehearing or a petition for reconsideration. It's, you know, they're asking the board to look again at something that it's already looked at once and that in this case it correctly decided at least as of the law of that time. Now, you know, if we, if the Supreme Court said, you've got to start explaining these petitions for rehearing and exactly why you're denying them and going through a couple of pages and even after you've gone through a couple of pages, they said, no, you should have done more, despite the fact that it isn't pointed out exactly what the board should have considered. I mean, I sometimes think when we're reviewing other bodies that we need to be cognizant of what would be a fair way for us to be reviewed. I kind of look at it, you know, that way in terms of what the, what a reviewing court, the difference that it owes the primary body. I would agree, Your Honor. In this case, as you mentioned, is maybe even somewhat unique in that the board actually does go through a fair amount of analysis of the petitioner's evidence in this case and gives a pretty good explanation of why they didn't feel he exercised due diligence and why they denied the motion to reopen. There's plenty of information here that they do review that they give a reasoned conclusion on. If I could just briefly address, the petitioners also raised the issue of sua sponte reopening. Mosear takes care of that, doesn't it? That's absolutely correct, Your Honor. We believe that there's no jurisdiction to hear that issue. On top of our overall jurisdictional issue, Mosear takes care of, as you say, Mosear takes care of the jurisdiction issue with sua sponte reopening as well. Let me ask you, Steve, Andre Newton, we have no questions. Thank you, Your Honor. I'll conclude then. Thank you very much. Ms. Altman, you've reserved some time for rebuttal, and we'd like to hear from you. Thank you, Your Honor. Ms. Altman, if I may, part of the challenge for you here, I think, is that I don't quite know how to ask this, and I don't quite know how to ask it in a way that's not offensive or misinformed. But from my perspective, the petitioner seemed to have had resources available to him, himself, his family. I mean, this was not someone who came into this country two years ago and didn't speak English and knew nothing about our legal system. He knew more than the average American about our legal system. I mean, he had a good family. He had a solid upbringing. And so I guess what I'm getting at is, in terms of due diligence, the board, I believe the board looked at all of that. And so this argument based on him being, you know, sort of lost somewhere in Jamaica, and I respect that argument, but it doesn't resonate, given this record. Well, I appreciate the question. Why did he file in the Second Circuit? Why did he file in the Second Circuit? It looks like it was some kind of, I don't know, I don't know what it was. But surely, you see what I'm getting at. I do. I'm sort of incoherent here. No, no, I appreciate the question, because I think that it, in fact, brings us to the heart of the case, which is that this is a challenging diligence assessment, because it requires us to put ourselves in the shoes of an unsophisticated claimant. And respectfully, Your Honor, I think. But he wasn't unsophisticated. My whole point is he's not unsophisticated. Well, so I first want to make a specific point, and then I'll get to the more general. I'll be quiet. No, no, no. And I do appreciate it. The specific point that I want to make goes to the error that was made by the board, and I want to make sure we don't continue here, which is to assume that the burden of diligence can be placed on anyone other than Mr. Lawrence himself. And, in fact, this was an issue in Holland. The district court in Holland rested its finding that there was not diligence, in part because of the fact that Mr. Holland had not relied on family and supporters to help him, and the Supreme Court clearly said that was error. There's a difference between saying that the immigrant's family didn't help him or that his friends didn't help him and asking the question, well, did he ask them for help? It seems like that's a reasonable question to ask in the inquiry on diligence. So I don't think it can be quite as blanket an assessment as I understood you to make. Well, the error that the Supreme Court found with regard to the district court's decision in Holland was exactly that, that Mr. Holland, the district court found it to be a problem that Mr. Holland had not asked for support, for help from his family, and that was an error. But getting to this bigger question, I do think it's difficult. It would be an error if you said that that was in and of itself, but it's not an error if the question is asked and there's a response. Well, why didn't you ask? Well, because we couldn't communicate or because we were estranged. But to me, that just seems like an essential part of diligence, I mean no different than asking about the inquiry to the attorneys. And if I may address this bigger elephant in the room, I think it is very difficult for us to understand what it would be like to be in a place where the only way you could quite literally access any communication by cell or Internet would be to take a 45-minute taxi ride to the nearest Internet cafe while you were trying to locate yourself in a new country where you hadn't been since the age of 11 and had no friends or family. That's what Mr. Lawrence was facing. He literally could not make a cell phone call. He had to pay for and take a 45-minute taxi ride any time he wanted to do so. That must be a barrier to access to courts if there ever has been one. He did get in touch with an attorney in September. He did, he did. And he made the, I would argue, eminently reasonable decision to trust her, to listen to her assurances that she was researching his case, researching the viability of the cancellation claim that you discussed with my opposing counsel, and then to try to find an attorney for him because she herself was so under-resourced, being the only attorney doing this sort of work, that she could not take the case herself. As soon as she let Mr. Lawrence know that she had found an attorney for him, he proceeded with his filing. So this is a case where there is not, there are not attorneys clamoring to do pro bono representation of individuals outside of the United States. Every time Mr. Lawrence wanted to check in with Ms. Kiko, the attorney at the Post-Deportation Human Rights Project, he had to find the money on his $60 a week salary. That strikes me as a good general argument for enlarging the 90-day period. I mean, it strikes me as a good argument, what you've just made, to go before Congress and saying, look, there are difficulties with access to legal help when people are abroad. But I don't think it really speaks to the particular question here. Well, in closing, because I see that I'm out of time, I think it speaks to actually the heart of the equitable tolling analysis, right, which the Supreme Court has reminded us that this is an analysis that allows courts sitting in equity to avoid unconscionable miscarriages of justice that apply when a filing deadline is too strictly enforced. And, in fact, what happened here is that that did preclude Mr. Lawrence from having his day in court, just an opportunity to present an application for cancellation of removal to an immigration judge. That is all he was seeking. And that is all he would be able to seek if this court were to remand with an opportunity to reopen his proceedings. Discretion would still remain with the attorney general at that time. Solomon, I want to thank you very much. And I thank you. The panel would like to come down and shake hands with all three of you, and then we'll take a brief recess. Thank you, Your Honors. This honorable court will take a brief recess.
judges: J. Harvie Wilkinson III, G. Steven Agee, Andre M. Davis